### In re F. L. BRADBURY CO.

(District Court, E. D. New York. January 16, 1925.)

1. **Bankruptcy ⫷140(1)—Trustee in possession of property sold under unrecorded conditional sales agreement is in situation of creditor holding under execution.**

Under Bankruptcy Act, § 47a (2), as amended in 1910 (Comp. St. § 9631), trustee coming into possession of property sold under conditional sales agreement, which has not been filed or recorded as required by state recording acts, is in situation of creditor holding execution or other lien by legal or equitable proceedings levied against such property.

2. **Bankruptcy ⫷140(1)—Unrecorded conditional sales agreement, void as against lien or judgment creditors, is void as to trustee in bankruptcy.**

Conditional sales agreement, void under state statute as against lien or judgment creditors of vendee unless recorded, is void as against trustee in bankruptcy of vendee in possession of property.

3. **Bankruptcy ⫷140(1)—Trustees in bankruptcy of purchaser of trucks under unrecorded conditional sales agreement held entitled to make sale free and clear of alleged lien of conditional vendor.**

Where conditional sales agreement covering electric trucks was not recorded at place of execution as required by Gen. St. Conn. 1918, §§ 4744, 4746, or at place of use as required by Uniform Conditional Sales Law, N. Y. which comprises sections 60–80-j of the Personal Property Law, particularly sections 65 and 66, *held*, under Bankruptcy Act, § 70a (Comp. St. § 9654), that trustee in bankruptcy of vendee, in possession of trucks could make sale free and clear of alleged lien of conditional vendor.

In Bankruptcy. In the matter of the F. L. Bradbury Company. On motion to con-

firm report of special commissioner on petition of Franklin M. Tomlin, trustee, for an order authorizing him to sell certain electric trucks on which vendor's lien was asserted. Motion granted, and report confirmed.

Order affirmed 8 F.(2d) 500.

The report of the special commissioner was as follows:

"On the 25th day of May, 1923, an agreement in writing was entered into between the Electric Truck Transportation Corporation, a corporation organized under the laws of the state of Delaware, and having its principal office and place of business at No. 25 West Forty-Third street, borough of Manhattan, city of New York; and F. L. Bradbury Company, the bankrupt corporation, which is a corporation organized under the laws of the state of Connecticut, having its principal place of business at Bridgeport, Conn. (Trustee's Exhibit A).

"By the terms of this agreement the Electric Truck Transportation Corporation, as vendor, agreed to sell to the bankrupt corporation, as vendee, 20 one-ton Walter electric delivery wagons, and 20 ironclad exide 42–13 batteries, upon the express condition that payment for the 20 trucks should be made in certain installments, commencing on the 15th day of October, 1923, and monthly thereafter until September, 15, 1933. The contract likewise provided for the payment in installments for the 20 batteries used to operate and propel said electric trucks in monthly installments covering the said period. Under the contract, the chassis and batteries of said trucks were to be assembled and delivered to the bankrupt corporation at the factory of the conditional vendor, at No. 243 West Sixty-First street, in the county of New York, as follows: 10 each on September 15, 1923, 5 on October 1, 1923, and 5 on October 15, 1923. The bankrupt agreed also to pay the government taxes on the property. The contract also provided that title to the batteries and chassis remain in the vendor, until all of the installments and sums due under the conditional sales contract were fully paid, and, upon failure to make payments, that the conditional vendor had the right to retake the property. The contract was executed by an officer of the vendor in the city of New York, and county of New York, and by the president of the bankrupt corporation, at Bridgeport, Conn. The contract was negotiated, however, and delivered at Bridgeport, Conn.

"On the 2d day of August, 1923, and prior to the delivery of any of the property under the conditional sales agreement afore-

said, a second contract in writing was made between the conditional vendor, and the bankrupt, as conditional vendee (Trustee's Exhibit B), whereby the vendor agreed to sell 20 one-ton Walter electric delivery wagons and 20 ironclad exide 42–13 batteries, as mentioned in the first contract, together with 20 bodies or tops to the wagons. This agreement seems to have been made to modify the previous agreement, and refers to the same, and provides, among other things, that payment for the 20 bodies shall be made in monthly installments, on the same dates provided in the previous agreement, and extending over a period of months, and provides that the bodies for these electric trucks shall be delivered at the factory of A. L. Lacey, in Bridgeport, Conn., as follows: 10 on September 15, 1923, 5 on October 1, 1923, and 5 on October 15, 1923; these dates being the same as those provided in the first agreement for delivery of the chassis and batteries. This second contract also provided that these bodies or tops were to be constructed at the factory of A. L. Lacey, at Bridgeport, Conn. This contract likewise provided that title to the property, to wit, the bodies, should also remain in the vendor until the bankrupt corporation had made all of the installment payments provided for.

"This second agreement also provided that it shall supplement and modify the agreement of May 25th hereinabove described. The second agreement was executed in the city and county of New York, by the vendor, and at Bridgeport, Conn., by the bankrupt corporation; this contract likewise was delivered at Bridgeport, Conn.

"The president of the bankrupt corporation lived at Bridgeport, and supervised the business from that place. The garage in the Bridgeport plant was used to store several Ford automobiles that were employed on the Bridgeport routes. These routes closed down, and ceased to operate altogether, in March, 1924, several months before the bankruptcy proceeding. The affidavit of Charles O. Miller, who for several years prior to the bankruptcy was the auditor and office manager of the bankrupt, specifically shows that these 20 electric trucks, together with the storage batteries, were purchased by the bankrupt for use at the Long Island City plant and were never used, employed, nor kept at Bridgeport nor any other place from the time that they were delivered in installments in October or November, 1923, by the vendor, and were first kept for use by the bankrupt, conditional vendee, at the Long Island City plant, where they have al-

8 F.(2d)—32

ways been kept and used from the time of their delivery up to the date of the bankruptcy proceedings, and where they came into the hands of the receiver and successively into the hands of the trustee, who now has them stored at the Long Island City plant. Mr. Miller is positive that these trucks were transported by representatives of the vendor, several at a time, from the wagon top builder at Bridgeport, to the Long Island City plant of the bankrupt. The bankruptcy proceedings were instituted in June, 1924, and these trucks were then in the possession of the bankrupt at its garage connected with the plant at Long Island City, where they still remain.

"The respondent, Electric Truck Transportation Corporation, called as a witness John B. N. Cardoza, its president, who testified (S. M. p. 8) that, although the first contract did not mention the bodies, it was originally intended to include said bodies, and that it was arranged between the contracting parties that the bodies should be made at Bridgeport, Conn. (S. M. p. 8); that the trucks, namely the chassis and batteries, were delivered to the bankrupt corporation at Bridgeport, where a receipt was taken for them from the bankrupt (S. M. pp. 9 and 10); that the bankrupt then ran the chassis to an electric garage, where they were painted and the tops put on at Bridgeport, and thereafter ran these cars to Long Island City, N. Y.

"On cross-examination this witness testified that the agreement (Exhibit A) was executed and delivered at Bridgeport, Conn. (S. M. p. 10). After these trucks were delivered to the bankrupt, these trucks were driven from Bridgeport to the Long Island City garage of the bankrupt, where they were first kept for use (S. M. p. 12). The witness was further asked whether, in the petition submitted to the court (paragraph 13) he did not state that the chassis and bodies were to be removed to Bridgeport, Conn., and that the assembled cars complete were to be delivered to the bankrupt at the Lacey factory at Bridgeport, Conn. The witness' attention was likewise called to paragraph 14 of the vendor's answer in this proceeding in which he stated that such delivery was made accordingly, and thereafter the assembled trucks were moved from the Lacey factory at Bridgeport, Conn., to the premises of the Bradbury Company at Long Island City, so that the assembled trucks with all equipment ready for use under the terms of both agreements were delivered by the vendor to the bankrupt at the Lacey factory at Bridg-

port. To this question, on cross-examination, in which reference was made verbatim to two sworn statements of this witness in his answer in this proceeding, the witness said, 'That is right' (S. M. p. 13).

"Again, on page 14, Stenographer's Minutes, the witness said that, under the terms of the Exhibit B, the contract was modified according to his understanding, so that the delivery of the completed trucks with ·the bodies were to be made at the Lacey factory at Bridgeport, and the witness reiterated (S. M. pp. 14 and 15) that the completed trucks with the bodies were actually delivered by the vendor to the bankrupt corporation at ,the Lacey factory at Bridgeport, Conn. The witness also was asked:

" 'Q. There is no question that these trucks, the finished product, were delivered at the Lacey factory, to the Bradbury Corporation at Bridgeport, Conn? A. That is where delivery took place' (S. M. p. 15).

"And again:

" 'Q. Your corporation delivered the finished product to the Lacey factory at Bridgeport, Conn., in other words, the delivery of the completed product to the bankrupt corporation was at Bridgeport, Conn., at the Lacey factory? A. Yes.

" 'Q. Under the first contract you were selling merely a chassis and at some later day a further contract would be made that would take in the sale of the complete truck with the top? A. Yes.

" 'Q. When you made the second contract, your idea was to also sell the Bradbury Company a complete truck—body and chassis? A. Correct.

" 'Q. When you made. the second and final contract, you provided and intended to make the contract for a complete truck, and the modification also provided for the payments in addition to the installments that were provided for in the first contract, additional monthly installments to cover the top and body? A. Yes; the second contract provided for the payment of monthly installments sufficient to cover chassis, body, battery and top' (S. M. p. 6).

"No evidence was offered tending to show that either of these conditional sales contracts were ever recorded or filed, in any recording office in New York State or in Connecticut. The agreements, when and if filed, should have been filed in the office of the clerk of the county of Queens, which is the county in the state of New York where, as shown by the evidence, the trucks were finally delivered to the conditional vendee, and kept by it for use.

[1] "Under the provisions of subdivision a(2) of section 47 of the Bankruptcy Law, as amended in 1910 (Comp. St. § 9631), a trustee in bankruptcy, who comes into possession of property sold by conditional sales agreements which are not filed or recorded as provided by state recording acts, is in the situation of a creditor holding an execution or other lien by legal or equitable proceedings levied against such property. Matter of Nelson (D. C.) 191 F. 233, 27 Am. Bankr. Rep. 272; Matter of Gehris Herbine Co. (D. C.) 188 F. 502, 26 Am. Bankr. Rep. 470.

[2] "A conditional sales agreement, void under a state statute as against lien or judgment creditors of the vendee unless recorded, is void as against the trustee in bankruptcy of the vendee, in possession of the property. Matter of Williamsburgh Knitting Mills (D. C.) 190 F. 871, 27 Am. Bankr. Rep. 178. Matter of Kreuger (D. C.) 199 F. 367, 27 Am. Bankr. Rep. 623; Matter of Farmers' Supply Co. (D. C.) 196 F. 990, 28 Am. Bankr. Rep. 535.

"The state of New York adopted the Uniform Conditional Sales Law (Laws 1922, c. 642), which comprises sections 60 to 80-j of the Personal Property Law of the state of New York in 1922 (Consol. Laws, c. 41). Section 65 of that law reads as follows:

" 'Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided. This section shall not apply to conditional sales of goods for resale.'

"Section 66 of the same act provides:

" 'The conditional sale contract or a copy thereof shall be filed in the office of the city or town clerk in the city or town in which the purchaser resides, if he resides within the state at the time of the execution thereof, and if not, in the city or town where the goods are first kept for use by the buyer after sale.'

"This section, then, provides that, where the property is within the borough of Queens, city of New York, the conditional sales agreement must be filed in the office of the clerk of the county of Queens.

[3] "So that here we have the statute of the state of New York expressly providing by section 65 that the conditional sale is void and every provision thereof is void as to a creditor who acquires by attachment or levy a lien upon the property before the contract

or a copy thereof is filed as required by section 66. Section 66 provides that the filing must take place in the county where the conditional vendee resides, or, if it affects a corporation by analogy, where its principal place of business is located. The bankrupt vendee herein was a nonresident of the state of New York, being a foreign corporation organized under the laws of Connecticut, so that under this statute the contract should have been recorded in the place where the goods were first kept for use by the buyer after sale. Undoubtedly, this was at the plant of the bankrupt at Long Island City, Queens county. There having been no registration or recording of the conditional sales agreement in the county of Queens, the recording act of this state was not complied with, and the trustee holds the property free of the lien of the conditional bill of sale, and as to him the conditional bill of sale is void.

"It has been held that the contract of conditional sale must be filed in the place fixed by statutes on or before the date of the delivery of the property. Otis Elev. Co. v. Rochester Friendly Home, 103 Misc. Rep. 76, 169 N. Y. S. 389

"The respondent here, in its verified answer, specifically alleges that the two conditional sales contracts were not delivered in New York, and affirmatively alleges that delivery was accomplished in Bridgeport, Conn.

"There is no evidence in this record of any character, as before stated, showing that these sales contracts were ever filed or recorded in Connecticut, so that, taking the allegations and testimony of Mr. Cardoza that delivery was made in Connecticut as a true statement of the facts, the respondent is in no better situation than with respect to the failure to file the contracts with the county clerk of Queens county, N. Y., for, if the entire conditional sale was negotiated in Connecticut, it would seem unnecessary to consider the subsequent removal of these trucks to Queens county, N. Y., because the sales contracts were not even filed in Connecticut.

"The laws of Connecticut provide that a conditional bill of sale must be recorded within a reasonable time after it is made in the town clerk's office where the conditional vendee resides. It is conceded by the lienor that these conditional bills of sale were never recorded in Connecticut.

"Section 4744 and section 4746 of the General Laws of the state of Connecticut, 1918 Revision, provide that, unless the conditional sales contract is recorded, as required by statute, the sale is considered absolute. See

In re Wilcox & Howe Co., 70 Conn. 228-234, 39 A. 163; Newtown Sav. Bank v. Lawrence, 71 Conn. 366, 41 A. 1054, 42 A. 255; American Clay Machinery Co. v. New England Brick Co., 87 Conn. 369, 87 A. 731.

"The trustee of an insolvent vendee under an unrecorded conditional bill of sale, even though the trustee has previous actual knowledge of the terms of the sale before taking over his duties as trustee, took the property free of the lien of said conditional bill of sale. National Cash Register Co. v. Woodbury, 70 Conn. 324, 39 A. 168. And it was held that, where a conditional bill of sale was not recorded, the sale was absolute as to the trustee in bankruptcy. Unmack v. Douglass, 75 Conn. 635, 55 A. 12; American Clay Machinery Co. v. New England Brick Co., 87 Conn. 369, 87 A. 731; Romeo v. Martucci, 72 Conn. 509, 45 A. 1, 99, 47 L. R. A. 601, 77 Am. St. Rep. 327; Jester v. Naples, 94 Conn. 569, 109 A. 894; Bohmann v. Perrett, 97 Conn. 575, 118 A. 42.

"The parties, including the trustee, are bound by the evidence as to the delivery of the contracts in Connecticut, and the subsequent removal of the trucks to Long Island City, and by the admission that they were not filed or recorded, as required by sections 4744 and 4746 of the General Laws of Connecticut; so that the failure to file the contracts in Connecticut rendered such sale absolute under the laws of that state, and the vendor thereby lost his lien as a conditional vendor.

"By the terms of 70a of the Bankruptcy Act (Comp. St. § 9654), the trustee is vested, by operation of law, with all property which, prior to the filing of the petition in bankruptcy, the bankrupt could by any means have transferred or which might have been levied upon and sold by judicial process against him.

"Under the Connecticut statute, the failure to file a conditional bill of sale made the sale an absolute one, and this property could have at any time been subjected to the debts and claims of creditors, before bankruptcy. See Re National Cash Register Co. v. Woodbury, 70 Conn. 321, 39 A. 168.

"Upon the facts and the law as shown in this record, I find:

"First: The conditional sales lien of the respondent is void as against the trustee in this proceeding.

"Second: The petition of the trustee for a sale of the property free and clear of the alleged lien asserted by the respondent should be granted."

Edward W. Drucker, of New York City, for trustee.

Allen McCarty, of New York City, for respondent.

CAMPBELL, District Judge. This matter comes before the court on a motion to confirm the report of Charles A. Tipling, Esq., special commissioner, dated January 16, 1925, to appoint appraisers of the chattels to be sold herein and to sell in pursuance of the rules of this court.

The questions presented have been thoroughly discussed in the briefs of the respective parties, and the law of Connecticut has by stipulation been formally made a part of the record.

The findings of the special commissioner are sustained by the evidence, and his conclusions are in harmony with the law.

The motion is therefore granted, and the report of the special commissioner is confirmed.